IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA HADAC, | ) | |
| | ) | No. 16 C 4729 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Patricia Hadac's ("Plaintiff") claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 8] is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is denied.

## BACKGROUND

### I. Procedural History

Plaintiff filed an application for DIB on November 19, 2013, alleging a disability onset date of August 12, 2013.[2] (R. 22.) Her initial application was denied

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

on July 18, 2014, and again at the reconsideration stage on May 15, 2015. (R. 123, 138.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 3, 2016. (R. 38–110.) Plaintiff appeared at the hearing, represented by counsel and offered testimony. (*Id.*) A vocational expert and medical expert also appeared and offered testimony. (*Id.*) On February 24, 2016, the ALJ issued an unfavorable written decision, finding Plaintiff is not disabled. (R. 19–37.) The Appeals Council ("AC") denied review on March 23, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–6).

## II. Medical Evidence

Plaintiff was born on February 16, 1951 and was sixty-two at the time of her alleged onset date. (R. 124.) She completed high school in 1968 and had worked at McDonald's Corporation as a service center representative since 1999. (R. 223–24, 238.) On August 1, 2000, Plaintiff was diagnosed with fibromyalgia, but she continued to work until August of 2013[3], at which time she went on short-term medical leave. (R. 381, 395.) Her short-term disability subsequently ended in January of 2014. (R. 381.)

---

[2] Plaintiff's DIB application and her Request for Hearing are not in her administrative record. The Court adopts the dates cited in this opinion based upon the information contained in the ALJ's decision.
[3] Plaintiff's record contains conflicting start dates of her short-term disability. Sometimes this date is reported as August of 2012. (R. 364, 369.)

**A. Medical Records**

In November 2013, at which time Plaintiff was already on short-term disability from work, she presented to Dr. Edward Sankary, M.D., due to tremors, pain, and fibromyalgia.[4] (R. 351.) In part, she and Dr. Sankary discussed the possibility of going on full-time disability. (*Id.*) Plaintiff explained that she felt that her symptoms had improved during her short-term disability and would resume if she were to begin working again. (R. 352.)

She returned to Dr. Sankary the next month, in December 2013, where she reported that she was doing "terrible" due to body pain, anxiety, tremors in her arms and legs, "fibro-fog",[5] and "fibro-zombiism". (R. 347.) Dr. Sankary diagnosed her with, inter alia, fibromyalgia, anxiety and depression, mixed disorders as a reaction to work-related stress, and panic attacks. (*Id.*) Later that same month, Dr. Sankary referred Plaintiff to a psychiatrist to evaluate her symptoms of anxiety and possible depression. (R. 364.)

Based upon Dr. Sankary's referral, Plaintiff began treatment with Dr. Frank DeLaurentis, Psy.D., in late December 2013. (R. 370). Upon examination, Dr. DeLaurentis diagnosed Plaintiff with an unspecified anxiety state. (R. 371.) Further down in his notes, he explained that her symptoms of anxiety were "mostly in the context of work." (R. 372.)

---

[4] According to a Fibromyalgia Residual Functional Capacity Questionnaire filled out by Dr. Sankary, as of September 2014, he had treated Plaintiff for eight years. (R. 391–93.) The administrative record does not contain records dating back to this date.

[5] Attributes of fibro-fog include attention and memory difficulties related to fibromyalgia. (R. 381.)

Plaintiff returned to Dr. Sankary in early 2014, where she expressed that she was concerned about her disability and the possibility that she may have to return to work. (R. 354–56.) Dr. Sankary discussed Plaintiff's fibromyalgia extensively with her before noting that he was following it through her psychiatry treatment. (R. 356.)

In January 2014, Dr. DeLaurentis expressed that Plaintiff did not have any evidence of clinical depression, but explained that returning to work would likely result in a relapse of her anxiety and significant impairments in her functioning. (R. 370.) Although Plaintiff returned to Dr. DeLaurentis in February 2014, it was not until March 2014, that he confirmed she had depressed mood and constricted affect. (R. 366.) At the same examination, Dr. DeLaurentis found that Plaintiff had no notable difficulties in memory or attention. (*Id.*) Dr. DeLaurentis opined that Plaintiff would be unable to return to her current work on a full-time basis, particularly because her anxiety and depression would likely increase under the day-to-day demands and work stressors. (*Id.*) Plaintiff continued treatment with Dr. DeLaurentis until at least June 2014, at which time he opined that Plaintiff had not have any significant changes since March 2014. (R. 844.) In fact, his June 2014 examination revealed that Plaintiff's mood was slightly depressed and anxious, but she showed no difficulties in memory or attention. (R. 845.)

In September 2014, Dr. Sankary completed a Fibromyalgia Residual Functional Capacity Questionnaire. (R. 391–93.) First, he confirmed that she met the American College of Rheumatology criteria for fibromyalgia, and noted that she

4

also suffered from depression, anxiety, and panic attacks. (*Id.*) In the report, he opined that Plaintiff would frequently be absent from work due to her impairments, could only occasionally sustain the attention and concentration need to perform simple work tasks, and would be incapable of even low-stress jobs. (*Id.*).

In addition to the foregoing, Plaintiff's record contains several opinions from non-examination state agency consultants, including Dr. R. Leon Jackson, Ph.D. (R. 118–20.) Dr. Jackson opined Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and respond to changes in the workplace setting. (R. 118–19.)

**B. Plaintiff's Testimony**

Plaintiff was present at her administrative hearing in February 2016 and offered testimony. In addition to detailing her pain symptoms and medical history, Plaintiff also testified about non-medical aspects of her life.

When asked if she traveled out of town, Plaintiff testified that her brother had fallen ill two years prior, so she flew to Florida to visit him. (R. 88.) She explained that in order to book her flight, she had searched online for "the best rates" and then "booked it" with another brother and her sister. (R. 88–89.) Her two

siblings accompanied her to Florida, where they relied on family members for transportation from the airport and for housing. (R. 89.)

Plaintiff also testified that she sold her house. (R. 82.) She stated that she attended the sale, but later explained that only she and her attorney were present, and she was only required to sign papers. (R. 82–83.)

In a Function Report which Plaintiff completed on February 6, 2015, Plaintiff disclosed that she sometimes travels by car when she is going out, in addition to walking and riding in a car. (R. 269.)

### III. ALJ Decision

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since August 12, 2013, her alleged onset date. (R. 24.) At step two, the ALJ concluded that Plaintiff has severe impairment of fibromyalgia and non-severe impairments of arthritis, bursitis, sleep apnea, thyroid nodules, hypertension and obesity.[6] (*Id.*) The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a Listing. (R. 26.) The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at a light exertional level. (R. 27.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a service center representative, leading to a finding that she is not disabled under the Act. (R. 32.)

---

[6] Medical evidence regarding Plaintiff's non-severe impairments has been omitted from this opinion.

# DISCUSSION

## I. ALJ LEGAL STANDARD

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported.") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron*, 19 F.3d at 333; *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Plaintiff alleges that the ALJ committed three errors: (1) his evaluation of her mental impairments was not supported by substantial evidence; (2) he improperly weighed the medical source opinions of record; and (3) he improperly discounted her subjective symptom allegations. Because the Court finds that the ALJ improperly weighed the medical source opinions, we need not address Plaintiff's other alleged errors at this time.

**A. The ALJ's RFC determination was unsupported by substantial evidence**

In evaluating a claim of disability, an ALJ "must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b). The opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also See Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record." *Campbell*, 627 F.3d at 306.

Even where a treating physician's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the

opinion. 20 C.F.R. § 404.1527(c). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

**i. Dr. Sankary**

Here, the ALJ improperly discounted the opinion of Dr. Edward Sankary, M.D. It is undisputed that Dr. Sankary is Plaintiff's treating physician. However, the ALJ gave insufficient reasons to reject Dr. Sankary's opinion as a treating physician. The ALJ gave "little weight" to the medical source statement of Dr. Sankary because it: (1) "was not supported by [Plaintiff's] medical records and (2) seemed to be based upon [Plaintiff's] subjective complaints. (R. 31.) There are several flaws in the ALJ's analysis.

First, the ALJ did not substantiate his assertion that Dr. Sankary's opinion was inappropriately based on Plaintiff's subjective complaints. The Seventh Circuit has found that "if the treating physician's opinion is . . . based solely on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (emphasis added). However, the Seventh Circuit recently noted that it is "illogical to dismiss the professional opinion of an examining [physician] simply because that opinion draws from the claimant's reported symptoms." *Aurand v. Colvin*, 654 Fed. Appx. 831, 837 (7th Cir. 2016) (unpublished opinion). "Almost all diagnoses require some consideration of the patient's subjective reports, and certainly [Plaintiff's] reports had to be factored into the calculus that yielded the doctor's opinion." *McClinton v. Astrue*, No. 09 C 4814, 2012 WL 401030, at *11 (N.D. Ill. Feb. 6, 2012). In this case, the ALJ neglected to "point to anything that suggests

11

that the weight [Dr. Sankary] accorded Plaintiff's reports was out of the ordinary or unnecessary, much less questionable or unreliable." *Davis v. Astrue*, No. 11 C 56, 2012 WL 983696, at *19 (N.D. Ill. Mar. 21, 2012). Thus, the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusion. *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Moreover, neither the ALJ nor the Commissioner cite to any evidence that Dr. Sankary based his opinion solely on Plaintiff's subjective complaints, and, therefore, this reason for denying weight to his opinion is unavailing.

What remains is a short one paragraph explanation from the ALJ as to why he rejected Dr. Sankary's opinion. The ALJ found that Dr. Sankary's statements that Plaintiff's symptoms would: occasionally interfere with the attention and concentration needed to perform simple work tasks, render her incapable of "low stress" jobs, and likely cause her be absent from work more than four months due to her impairments, were "not supported by [her] medical record." (R. 31.) For this reason he rejected his opinion entirely, assigning it no weight. Before making this decision, however, the ALJ failed to consider several of the factors required by the regulations. In particular, the ALJ did not consider the nature of Dr. Sankary and Plaintiff's treating relationship, the duration of the relationship, the internal consistency of Dr. Sankary's opinions, including that Plaintiff would have significant limitations at work, or the supportability of Dr. Sankary's statements with the rest of Plaintiff's administrative record, including the findings of the state agency consultant that Plaintiff would have moderate difficulties maintaining

12

attention concentration for extended periods and completing a workday or workweeks without interruptions from psychologically based symptoms. The ALJ's failure to articulate the application of the regulatory factors to his ultimate conclusion warrants remand for a more thorough analysis.

### i. Dr. Frank DeLaurentis

The ALJ also improperly discounted the opinion of Dr. Frank DeLaurentis, M.D. The ALJ gave "little weight" to the medical source statement of Dr. DeLaurentis because it: (1) "appear[ed] to be based on [Plaintiff's] concerns that she would relapse if she returned to work", not Dr. DeLaurentis's own objective findings; and (2) "was not supported by [Plaintiff's] activities since the alleged onset date." (R. 30.) The ALJ's determination with respect to Dr. DeLaurentis's opinion is also flawed.

First, as was the case with Dr. Sankary, the ALJ did not substantiate his assertion that Dr. DeLaurentis's opinion was inappropriately based on Plaintiff's subjective concerns that she would relapse if she returned to work. For reasons which mirror those that the Court has already applied to Dr. Sankary, this reason for denying weight to his opinion is likewise unavailing.[7]

Second, the ALJ also erroneously rejected Dr. DeLaurentis's opinion because he found that Plaintiff "participated and routinely engaged in several activities that required complex mental functioning", such as driving, making travel plans, effecting those plans—specifically by navigating busy airports—and appearing at

---

[7] The fact that Dr. DeLaurentis is a psychiatrist has no effect on this determination. Psychiatrists are reserved controlling weight under the regulations. 20 C.F.R. § 404.1527.

13

the sale of her house. (R. 30.) As the Seventh Circuit says in *Bjornson v. Astrue*, ALJ's must be able to distinguish "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter . . . and is not held to a minimum standard of performance, as she would be by an employer. 671 F.3d 640, 47 (7th Cir. 2012.)

The record contains no evidence that Plaintiff traveled independently, let alone, navigated busy airports. In her testimony, Plaintiff stated that she flew to Florida accompanied by her siblings, was picked up at the airport by her family members, and stayed with them at her brother's house. As the Seventh Circuit has pointed out, an ALJ may not ignore the impact of assistance from family members when evaluating a claimant's daily activities. *Bjorn*, 671 F.3d. at 647. Similarly, Plaintiff's attendance at the sale of her house did not require her to engage in complex mental functioning; rather she testified she was only present to sign papers. Moreover, Plaintiff indicated that she drove, but the record provides no evidence of how often Plaintiff drove (as opposed to walked or was a passenger), or if she required any assistance while driving. Based on this evidence alone, it was unreasonable for the ALJ to discount the opinion of Dr. DeLaurentis.

Yet, even if we were to accept the ALJ's finding that Plaintiff routinely engaged in complex mental activities, the ALJ failed to apply any of the other regulatory factors to Dr. DeLaurentis's opinion. While the ALJ correctly pointed out that Dr. DeLaurentis is a psychiatrist, he failed to consider that Plaintiff presented to Dr. DeLaurentis monthly between late 2013 and mid-2014, that his findings were

supported by the notes of other doctors, including Dr. Sankary's treatment notes and Dr. Jackson's non-examining review. Moreover, the ALJ attempted to discount Dr. DeLaurentis's opinion because his findings that Plaintiff could not manage day-to-day demands and workplace stressors was contradicted by his consistently negative findings in terms of ongoing deficits in alertness, memory, and attention. This conclusion ignores the fact that Dr. DeLaurentis opined that Plaintiff's anxiety and depression may be triggered by workplace stressors, not her ability to concentrate. Accordingly, we must remand so the ALJ can provide a more thorough analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. The Court finds that his matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**           **ENTERED:**

**DATE:   November 1, 2017**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**

15